J-S75004-19

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| DION ELIJAH WAYNE | |
| Appellant | No. 146 WDA 2019 |

Appeal from the Judgment of Sentence Entered December 21, 2018
In the Court of Common Pleas of Erie County
Criminal Division at No.: CP-25-CR-0000697-2018

BEFORE: STABILE, KUNSELMAN, and PELLEGRINI,[*] JJ.

MEMORANDUM BY STABILE, J.: FILED MARCH 17, 2020

Appellant Dion Elijah Wayne appeals from the December 21, 2018 judgment of sentence entered in the Court of Common Pleas of Erie County ("trial court"), following his jury convictions for possession with intent to deliver (heroin and/or fentanyl), tampering with or fabricating physical evidence, and criminal use of communication facility.[1] Upon review, we affirm.

The facts and procedural history of this case are undisputed. As aptly summarized by the trial court:

> On January 5, 2018, Adam Yurkewicz's grandmother found Yurkewicz unconscious in the bathroom of her residence at 815 Michigan Avenue, Erie, Pennsylvania. The grandmother telephoned 911 and the Millcreek Township Police were dispatched to the residence. Detective Ryan Presner [who was employed as a patrol officer at the time] was the first police officer to arrive at

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] 35 P.S. § 780-113(a)(30) and 18 Pa.C.S.A. §§ 4910(1) and 7512(a), respectively.

the scene. Upon arrival, Detective Pruner observed Yurkewicz on the floor. Yurkewicz bad a "bluish-purple tint" and was surrounded by firefighters who were checking for a pulse. Presner also observed a partially loaded syringe in the bathroom sink.

Yurkewicz was placed in an ambulance where Presner went through Yurkewicz's pockets and recovered a cell phone and a pack of cigarettes which contained a folded-up piece of paper holding a white, chalky substance. Yurkewicz was transported to UPMC Hamot Hospital where he died early the following morning, on January 6, 2018. It was determined Yurkewicz died from an overdose of fentanyl. Presner turned over Yurkewicz's cell phone to Detectives Hardner and Morelli of the Special Investigations Unit of the Millcreek Police Department when they arrived at the scene. Detective Hardner examined the call log and text messages on the cell phone to determine whether a transaction involving drugs had occurred. He read text messages exchanged during the morning of January 5, 2018 between Yurkewicz's cell phone and the telephone number "814-449-9983" (hereinafter 9983). Detective Hardner found 9983 was entered in Yurkewicz's contact information under the name "Louis". Based upon the content of these messages and Detective Hardner's experience in narcotics investigations, he determined 9983 was a "phone number of interest" with regard to the investigation surrounding Yurkewicz's death. Detective Anne Styn extracted contents of the cell phone including the text messages, call logs, photographs, a web history, Facebook and Snapchat accounts associated with Yurkewicz, and a Gmail account with the email address Yurks42589.

At trial, the Commonwealth presented testimony from Yurkewicz's fiancée, Kayla Turk. Turk was familiar with Yurkewicz's cell phone and testified she was present when Yurkewicz was sending text messages from his cell phone the morning of January 5, 2018. Turk also identified Commonwealth Exhibit 18 as a list of personal text messages between herself and Yurkewicz on January 5, 2018. The Commonwealth's witness Marlene Yurkewicz, the decedent's grandmother, testified as to calls she made to Yurkewicz's cell phone on January 5, 2018, that had been recovered in Yurkewicz's cell phone records.

At trial, Detective Hardner testified concerning Commonwealth Exhibit 13, a transcription of text messaging between Yurkewicz's cell phone and 9983, the aforementioned number of interest, from the morning of January 5, 2018. Detective Hardner testified these texts were highly indicative of drug dealing. Detective Hardner testified about the content of the text messages as follows:

MR. SELLERS: All right. Again, Detective, tell the jury which of these messages come from Adam Yurkewicz and which of them go to the number identified as Louis.

HARDNER: Adam Yurkewicz is the blue messages, and the Louis phone number is the one in yellow.

MR. SELLERS: And can you read them for us?

HARDNER: Yes. Adam says, yo. The guy responds, sup. He says, WYA, where you at. He says, over east. He says, on my way.

MR. SELLERS: Next slide.

HARDNER: What you needed? He responds, 60. Where should I go, then question mark. Bout to be on the east. He responds, 25 German.

MR. SELLERS: Next slide.

HARDNER: He says, K. Be like 10 to 15. How much for the half. He says, 80 bro. Then, K.

MR. SELLERS: Next slide.

HARDNER: Then, give me that. He says, yup. He says, bout to pull up. He says, okay. Here. Then, 24 German between Parade.

. . . .

MR. SELLERS: Can you read that for us?

HARDNER: K. Here. And then, you good bro.

Pings to cell phone towers from Yurkewicz's cell phone placed Yurkewicz in the area of 24th and German Streets at approximately the same time he received the text messages from 9983 directing him to meet there for the transaction.

During the afternoon of January 5, 2018, Detective Hardner texted 9983 from a random telephone number generated by a special application on Detective Hardner's cell phone in an effort to set up a drug transaction with the person who was using the cell phone associated with 9983. Detective Hardner received a telephone call from a male calling from 9983. Further texting between Detective Hardner and 9983 ensued but Detective Hardner was unsuccessful in setting up a drug transaction.

On January 6, 2018, after learning Yurkewicz died, Detective Hardner used Yurkewicz's cell phone in another attempt to reach 9983. The content of the text messaging of January 6, 2018 between Detective Hardner, from Yurkewicz's cell phone, and the person who was using the cell phone associated with 9983 was introduced into evidence as Commonwealth Exhibit 12. Detective Hardner testified concerning these texts as follows:

MR. SELLERS: Okay. Can you read for the jury these text message conversations, and indicate which ones are from you and which ones are from the other number?

- 3 -

HARDNER: I'm sending the blue messages, and the messages on the other end are the yellow.

HARDNER: I texted, yo. He responded, sup. I said, got 100 just waiting for a ride. He said, okay bro. I said, ready where should I go.

MR. SELLERS: All right. Next slide.

HARDNER: He said, okay what you got bro. I said 100. And then when I didn't have a response, I sent a question mark. And then he said, meet me on 24. I said, K, and then, pulling up.

MR. SELLERS: Next slide.

HARDNER: Then I said, I'm in my step-mom's blue truck.

Consistent with the above texts, Detective Hardner drove to East 24th Street between German and Parade Streets in a blue undercover vehicle and pulled over to the side of the road. Several back-up officers were stationed in vehicles nearby. A white Audi was observed traveling west along East 24th Street in the same block where Detective Hardner was parked. The Audi pulled over and Appellant, the front-seat passenger, exited the Audi and entered a residence at 344 East 24th Street, later learned to be Appellant's mother's residence. [Appellant resided next door at 348 East 24th Street.] Appellant returned to the Audi a few minutes later and got into the front passenger seat. The vehicle operator drove the Audi further west along 24th Street, passing Detective Hardner's blue vehicle, and pulled over a few car-lengths ahead of Detective Hardner's vehicle. At this time, Detective Hardner received a telephone call on Yurkewicz's cell phone from 9983. The male caller instructed Detective Hardner to exit the vehicle and come over to the "white car". Detective Hardner notified the back-up officers who then approached the white Audi.

From the front of the Audi, Detective Fiorelli, one of the back-up officers, observed through the front windshield Appellant leaning forward in the passenger seat "making furtive movements with his arms towards the floorboards of the front passenger's seat." Appellant and the driver, Javar Beason, were arrested. Detective Fiorelli observed a white powdery substance on the right leg of Appellant's black sweatpants, which Appellant kept trying to brush off. Detective Fiorelli observed on the floor mat on the front passenger side a chunky substance with powder residue on top. The substances on the floor mat were collected for analysis which revealed the substances contained heroin and fentanyl. During the search of the vehicle, Detective Fiorelli located a folded-up piece of white paper, torn from a larger piece of paper, which had been folded over several times with creases in it. Detective Fiorelli testified this was a very common way of packaging heroin or fentanyl. Detective Fiorelli recovered an iPhone in a red and black

case from a cupholder in the center console between the driver's and passenger's seats. During the search of Appellant, the police found a wallet containing $65.00 in U.S. currency, Appellant's ID, a cell phone, and another $1,020.00 in U.S. currency "in a stack." During the search of Beason, the police recovered $70.00 and Beason's cellphone.

The items recovered during the searches were brought to the police station. There, Detective Hardner called 9983 from his personal cell phone whereupon the iPhone in the red and black case rang. Detective Hardner determined this iPhone was the cell phone associated with 9983, the same number which Detective Hardner had engaged in communication with from Detective Hardner's cell phone on January 5, 2018 and from Yurkewicz's cell phone on January 6, 2018.

At trial, the Commonwealth witness Detective Styn testified regarding Verizon call and text records from 9983. Detective Styn confirmed the report from Verizon included text message exchanges between 9983 and unidentified third parties on January 5 and January 6, 2019.

Detective Fiorelli testified from Verizon records as to the contents of these text message exchanges. The texts described other drug transactions with 9983, some set up to occur in the vicinity of 24th and German Streets. The texts clearly contained references to the use and exchange of narcotics. Commonwealth witness Detective Benacci, an expert witness in drug transactions and sales, testified the texts between 9983 and third parties and between 9983 and Yurkewicz were evidence of drug dealing. Detective Fiorelli also testified about a text exchange of a personal nature between 9983 and a third party during the relevant timeframe. In the texts, the third party addressed Appellant by name, "Dion," and 9983 responded "sup."

Trial Court Opinion, 4/8/19 at 1-8 (footnotes and record citations omitted).

Appellant was arrested and charged with drug delivery resulting in death, PWID (fentanyl), possession of drug paraphernalia, possession (heroin/fentanyl), tampering with or fabricating physical evidence, PWID (heroin and/or fentanyl) and criminal use of communication facility.[2] Following a multi-day trial, a jury found Appellant guilty of only PWID (heroin

_____

[2] 18 Pa.C.S.A. § 2506, 35 P.S. § 780-113(a)(30) and (16), 18 Pa.C.S.A. § 4910(1), 35 P.S. § 780-113(a)(30), and 18 Pa.C.S.A. § 7512(a), respectively.

and/or fentanyl), tampering with or fabricating physical evidence, and criminal use of communication facility. On December 21, 2018, the trial court sentenced Appellant to an aggregate term of 50 to 107 months and 15 days in prison. Appellant filed post-sentence motions, which the trial court denied on January 2, 2019. Appellant timely appealed. On February 4, 2019, the trial court directed Appellant to file a Pa.R.A.P. 1925(b) statement within 30 days. Appellant complied.[3] In response, the trial court issued a detailed Pa.R.A.P. 1925(a) opinion. On June 6, 2019, upon Appellant's application, we remanded this case to the trial court to permit Appellant to amend his Rule 1925(b) statement. In his amended Rule 1925(b) statement, Appellant challenged the sufficiency of the evidence underlying his convictions. On August 15, 2019, the trial court issued a supplemental Rule 1925(a) opinion addressing Appellant's sufficiency claims.

On appeal, Appellant presents three issues for our review.

[I.] Whether the trial court committed an abuse of discretion and/or error of law in admitting the text messages received by and sent from the cell phone recovered from the white Audi in violation of Commonwealth v. Koch[, 106 A.3d 705 (Pa. 2014)] as they were not properly authenticated?[4]

_____

[3] He filed his Rule 1925(b) statement on February 28, 2019, well within the 30-day deadline established by the trial court's February 4, 2019 order.

[4] We have explained:

Our standard of review over evidentiary rulings requires us to determine whether the trial court abused its discretion. An abuse of discretion may not be found merely because an appellate court might have reached a different conclusion, but requires a result of

[II.] Whether the Commonwealth failed to present sufficient evidence to find Appellant guilty beyond a reasonable doubt of PWID, tampering with/fabricating physical evidence, and criminal use of communication facility?[5]

[III.] Whether Appellant's claims on appeal should be dismissed/quashed due to the fact that Appellant filed an untimely 1925(b) statement?[6]

Appellant's Brief at 3 (unnecessary capitalizations omitted).

_____

manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support so as to be clearly erroneous.

Commonwealth v. Henkel, 938 A.2d 433, 440 (Pa. Super. 2007) (internal citations omitted), appeal denied, 955 A.2d 356 (Pa. 2008).

[5] "A claim challenging the sufficiency of the evidence is a question of law." Commonwealth v. Widmer, 744 A.2d 745, 751 (Pa. 2000).

The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the finder of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

Commonwealth v. Antidormi, 84 A.3d 736, 756 (Pa. Super. 2014), appeal denied, 95 A.3d 275 (Pa. 2014).

[6] As noted in the text, Appellant filed a timely Rule 1925(b) statement and, as a result, we need not decide his third issue on appeal.

After careful review of the record and the relevant case law, we conclude that the trial court accurately and thoroughly addressed the merits of Appellant's issues on appeal. See Trial Court Opinion, 4/8/19, at 10-21; Supplemental Opinion, 8/15/19 at 2-8. With respect to Appellant's first issue, we conclude that the trial court did not abuse its discretion in overruling Appellant's authentication challenge[7] and admitting into evidence the text messages recovered from the cell phone in the white Audi. As the trial court concluded:

> There was sufficient testimony from witnesses with knowledge demonstrating the cell phone was what it was purported to be – Appellant's cell phone. Detective Fiorelli testified that the iPhone in the red and black case was recovered next to Appellant's seat in the vehicle, and the iPhone was connected to the number 9983. There was significant contextual clues and circumstantial evidence corroborating that Appellant was the author of the text messages at issue. This included: the texts between Yurkewicz and 9983 . . .; the contents of texts between third parties and 9983 using slang terms consistent with drug dealings, where 9983 set up the location for the transaction in areas near Appellant's home; and third party texts identifying Appellant by name to which he responded affirmatively. Most significantly, at the time and place of the undercover drug deal between the author of texts from 9983 and Detective Hardner, Appellant arrived in a white Audi in possession of heroin and fentanyl.

Trial Court Opinion, 4/8/19 at 14. Relating to Appellant's sufficiency challenges, we agree with the trial court's conclusion that, based upon the record evidence viewed in a light most favorable to the Commonwealth as the verdict winner, the Commonwealth proved beyond a reasonable doubt that Appellant committed PWID, tampering with or fabricating physical evidence,

_____

[7] "Authentication generally entails a relatively low burden of proof." Koch, 106 A.3d at 713.

and criminal use of communication facility. Accordingly, we affirm the trial court's December 21, 2018 judgment of sentence. We further direct that a copy of the trial court's April 8, 2019 and August 15, 2019 opinions be attached to any future filings in this case.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 3/17/2020

PD'S

COMMONWEALTH OF PENNSYLVANIA   :   IN THE COURT OF COMMON PLEAS
                            :   OF ERIE COUNTY, PENNSYLVANIA
                            :
           v.               :   CRIMINAL DIVISION
                            :
DION ELIJAH WAYNE           :   NO. 697 - 2018

## OPINION

This matter is before the Court on Appellant's 1925(b) Concise Statement of Matters Complained of on Appeal. For the reasons set forth below, the judgment of sentence should be affirmed.[1]

## FACTUAL BACKGROUND

On January 5, 2018, Adam Yurkewicz's grandmother found Yurkewicz unconscious in the bathroom of her residence at 815 Michigan Avenue, Erie, Pennsylvania. *Transcript of Proceedings, Day 2, November 14, 2018 (Tr. Day 2) pp. 70-77.* The grandmother telephoned 911 and the Millcreek Township Police were dispatched to the residence. *Transcript of Proceedings, Day 1, November 13, 2018 (Tr. Day 1) pp. 117-120.* Detective Ryan Presner [2] was the first police officer to arrive at the scene. Upon arrival, Detective Presner observed Yurkewicz on the floor. Yurkewicz had a "bluish-purple tint" and was surrounded by firefighters who were checking for a pulse. *Tr. Day 1, p. 118.* Presner also observed a partially loaded syringe in the bathroom sink. *Tr. Day 1, pp. 120-127.*

---

[1] The Honorable William R. Cunningham presided at the jury trial, sentenced Appellant, and issued the 1925(b) Order. Judge Cunningham also addressed the post-sentence motion. Due to the recent retirement of Judge Cunningham, this matter was reassigned to the undersigned for preparation of the 1925(a) Opinion.

[2] Detective Presner was employed by the Millcreek Township Police Department as a patrol officer at the time.

### a. Discovery of Adam Yurkewicz's cell phone - January 5, 2018

Yurkewicz was placed in an ambulance where Presner went through Yurkewicz's pockets and recovered a cell phone and a pack of cigarettes which contained a folded-up piece of paper holding a white, chalky substance. *Tr. Day 1, pp. 128-131.* Yurkewicz was transported to UPMC Hamot Hospital where he died early the following morning, on January 6, 2018. It was determined Yurkewicz died from an overdose of fentanyl. *See Tr. Day 1, pp. 150-181.*

Presner turned over Yurkewicz's cell phone to Detectives Hardner and Fiorelli of the Special Investigations Unit of the Millcreek Police Department when they arrived at the scene. *Tr. Day 1, pp. 130-131.* Detective Hardner examined the call log and text messages on the cell phone to determine whether a transaction involving drugs had occurred. *Tr. Day 1, p. 184.* He read text messages exchanged during the morning of January 5, 2018 between Yurkewicz's cell phone and the telephone number "814-449-9983" (hereinafter 9983). *Tr. Day 1, pp. 184-185.* Detective Hardner found 9983 was entered in Yurkewicz's contact information under the name "Louis". *Tr. Day 1, p. 232.* Based upon the content of these messages and Detective Hardner's experience in narcotics investigations, he determined 9983 was a "phone number of interest" with regard to the investigation surrounding Yurkewicz's death. Detective Anne Styn extracted contents of the cell phone including the text messages, call logs, photographs, a web history, Facebook and Snapchat accounts associated with Yurkewicz, and a Gmail account with the email address Yurks42589. *Tr. Day 2, p. 131.*

### b. Communications sent from and received on Yurkewicz's cell phone - January 5, 2018

At trial, the Commonwealth presented testimony from Yurkewicz's fiancée, Kayla Turk. *Tr. Day 2, pp. 106-119.* Turk was familiar with Yurkewicz's cell phone and testified she was present when Yurkewicz was sending text messages from his cell phone the morning of January

2

5, 2018. *Tr. Day 2, pp. 111-112; 116-117.* Turk also identified Commonwealth Exhibit 18 as a list of personal text messages between herself and Yurkewicz on January 5, 2018. *Tr. Day 2, pp. 111-114.* The Commonwealth's witness Marlene Yurkewicz, the decedent's grandmother, testified as to calls she made to Yurkewicz's cell phone on January 5, 2018, that had been recovered in Yurkewicz's cell phone records. *Tr. Day 2, pp. 75-76; 134.*

At trial, Detective Hardner testified concerning Commonwealth Exhibit 13, a transcription of text messaging between Yurkewicz's cell phone and 9983, the aforementioned number of interest, from the morning of January 5, 2018. *Tr. Day 1, p. 232.* Detective Hardner testified these texts were highly indicative of drug dealing. Detective Hardner testified about the content of the text messages as follows:

> MR. SELLERS: All right. Again, Detective, tell the jury which of these messages come from Adam Yurkewicz and which of them go to the number identified as Louis.
>
> HARDNER: Adam Yurkewicz is the blue messages, and the Louis phone number is the one in yellow.
>
> MR. SELLERS: And can you read them for us?
>
> HARDNER: Yes. Adam says, yo. The guy responds, sup. He says, WYA, where you at. He says, over east. He says, on my way.
>
> MR. SELLERS: Next slide.
>
> HARDNER: What you needed? He responds, 60. Where should I go, then question mark. Bout to be on the east. He responds, 25 German.
>
> MR. SELLERS: Next slide.
>
> HARDNER: He says, K. Be like 10 to 15. How much for the half. He says, 80 bro. Then, K.
>
> MR. SELLERS: Next slide.
>
> HARDNER: Then, give me that. He says, yup. He says, bout to pull up. He says, okay. Here. Then, 24 German between Parade.

3

. . .

MR. SELLERS: Can you read that for us?

HARDNER: K. Here. And then, you good bro.

*Tr. Day 1, pp. 232-234.*

Pings to cell phone towers from Yurkewicz's cell phone placed Yurkewicz in the area of 24th and German Streets at approximately the same time he received the text messages from 9983 directing him to meet there for the transaction. *Tr. Day 1, pp. 232-234; Tr. Day 2, pp. 226-227.*

### c. Communications between Detective Hardner's cell phone (from a randomly generated number) and "9983" - January 5, 2018

During the afternoon of January 5, 2018, Detective Hardner texted 9983 from a random telephone number generated by a special application on Detective Hardner's cell phone in an effort to set up a drug transaction with the person who was using the cell phone associated with 9983. *Tr. Day 1, pp. 185-188.* Detective Hardner received a telephone call from a male calling from 9983. Further texting between Detective Hardner and 9983 ensued but Detective Hardner was unsuccessful in setting up a drug transaction.

### d. Communications between Yurkewicz's cell phone (utilized by Detective Hardner) and "9983" - January 6, 2018

On January 6, 2018, after learning Yurkewicz died, Detective Hardner used *Yurkewicz's cell phone* in another attempt to reach 9983. *Tr. Day 1, pp. 189-191.* The content of the text messaging of January 6, 2018 between Detective Hardner, from Yurkewicz's cell phone, and the person who was using the cell phone associated with 9983 was introduced into evidence as

4

Commonwealth Exhibit 12. *Tr. Day 1, p. 201.* Detective Hardner testified concerning these texts as follows:

> MR. SELLERS: Okay. Can you read for the jury these text message conversations, and indicate which ones are from you and which ones are from the other number?
>
> HARDNER: I'm sending the blue messages, and the messages on the other end are the yellow.
>
> HARDNER: I texted, yo. He responded, sup. I said, got 100 just waiting for a ride. He said, okay bro. I said, ready where should I go.
>
> MR. SELLERS: All right. Next slide.
>
> HARDNER: He said, okay what you got bro. I said 100. And then when I didn't have a response, I sent a question mark. And then he said, meet me on 24. I said, K, and then, pulling up.
>
> MR. SELLERS: Next slide.
>
> HARDNER: Then I said, I'm in my step-mom's blue truck.

*Tr. Day 1, pp. 201-202.*

### e. Recovery of the cell phone associated with the number "9983" - January 6, 2018

Consistent with the above texts, Detective Hardner drove to East 24th Street between German and Parade Streets in a blue undercover vehicle and pulled over to the side of the road. *Tr. Day 1, pp. 191-197.* Several back-up officers were stationed in vehicles nearby. *Tr. Day 1, p. 194.* A white Audi was observed traveling west along East 24th Street in the same block where Detective Hardner was parked. *Tr. Day 1, pp. 195-196; Tr. Day 2, pp. 13-14; 151-152.* The Audi pulled over and Appellant, the front-seat passenger, exited the Audi and entered a residence at 344 East 24th Street, later learned to be Appellant's mother's residence.[3] Appellant returned to

---

[3] The police later learned Appellant resided next door to his mother at 348 East 24th Street with his grandmother. *Tr. Day 2, pp. 246-247.*

the Audi a few minutes later and got into the front passenger seat. The vehicle operator drove the Audi further west along 24th Street, passing Detective Hardner's blue vehicle, and pulled over a few car-lengths ahead of Detective Hardner's vehicle. *Tr. Day 1, p. 195.* At this time, Detective Hardner received a telephone call on Yurkewicz's cell phone from 9983. *Tr. Day 1, p. 196.* The male caller instructed Detective Hardner to exit the vehicle and come over to the "white car". *Tr. Day 2, pp. 189-197.* Detective Hardner notified the back-up officers who then approached the white Audi.

From the front of the Audi, Detective Fiorelli, one of the back-up officers, observed through the front windshield Appellant leaning forward in the passenger seat "making furtive movements with his arms towards the floorboards of the front passenger's seat." *Tr. Day 2, p. 153-154.* Appellant and the driver, Javar Beason, were arrested. Detective Fiorelli observed a white powdery substance on the right leg of Appellant's black sweatpants, which Appellant kept trying to brush off. *Tr. Day 2, p. 156.* Detective Fiorelli observed on the floor mat on the front passenger side a chunky substance with powder residue on top. The substances on the floor mat were collected for analysis which revealed the substances contained heroin and fentanyl. *Tr. Day 2, pp. 233-235.* During the search of the vehicle, Detective Fiorelli located a folded-up piece of white paper, torn from a larger piece of paper, which had been folded over several times with creases in it. Detective Fiorelli testified this was a very common way of packaging heroin or fentanyl. *Tr. Day 2, pp. 157-161.* Detective Fiorelli recovered an iPhone in a red and black case from a cupholder in the center console between the driver's and passenger's seats. *Tr. Day 2, pp. 162-164.* During the search of Appellant, the police found a wallet containing $65.00 in U.S. currency, Appellant's ID, a cell phone, and another $1,020.00 in U.S. currency "in a stack." *Tr.*

6

*Day 2, pp. 164-166.* During the search of Beason, the police recovered $70.00 and Beason's cellphone. *Tr. Day 2, pp.39-40; 164.*

The items recovered during the searches were brought to the police station. There, Detective Hardner called 9983 from his personal cell phone whereupon the iPhone in the red and black case rang. *Tr. Day 2, pp. 166-167.* Detective Hardner determined this iPhone was the cell phone associated with 9983, the same number which Detective Hardner had engaged in communication with from Detective Hardner's cell phone on January 5, 2018 and from Yurkewicz's cell phone on January 6, 2018. *Tr. Day 3, p. 167.*

### f. Communications between "9983" and unidentified third parties – January 5 and January 6, 2018

At trial, the Commonwealth witness Detective Styn testified regarding Verizon call and text records from 9983. *Tr. Day 2, pp. 121-129.* Detective Styn confirmed the report from Verizon included text message exchanges between 9983 and unidentified third parties on January 5 and January 6, 2019.

Detective Fiorelli testified from Verizon records as to the contents of these text message exchanges. *Tr. Day 2, pp. 168-186.* The texts described other drug transactions with 9983, some set up to occur in the vicinity of 24th and German Streets. The texts clearly contained references to the use and exchange of narcotics.[4] Commonwealth witness Detective Benacci, an expert witness in drug transactions and sales, testified the texts between 9983 and third parties and between 9983 and Yurkewicz were evidence of drug dealing. *Tr. Day 2, pp. 251-293.* Detective Fiorelli also testified about a text exchange of a personal nature between 9983 and a third party

---

[4] See *Tr. Day 2, pp. 178-179* and Commonwealth Exhibit 28; *Tr. Day 2, pp. 183-186* and Commonwealth Exhibit 30

during the relevant timeframe. In the texts, the third party addressed Appellant by name, "Dion," and 9983 responded "sup." [5]

## PROCEDURAL BACKGROUND

Following his arrest, Appellant was charged with Drug Delivery Resulting in Death, Possession With Intent to Deliver (fentanyl), Possession of Drug Paraphernalia, Possession (heroin and/or fentanyl), Tampering With or Fabricating Physical Evidence, Possession With Intent to Deliver (heroin and/or fentanyl) and Criminal Use of Communication Facility. [6]

On November 15, 2018, following a three-day jury trial, Appellant was convicted of: Tampering With or Fabricating Physical Evidence, Possession With Intent to Deliver (heroin and/or fentanyl) and Criminal Use of Communication Facility. [7]

On December 21, 2018, Appellant was sentenced to an aggregate period of 50 - 107 months and 15 days of incarceration as follows:

> Count Five: Tampering With or Fabricating Physical Evidence – 8 months to 23 months and 15 days of incarceration, consecutive to Count Seven.
>
> Count Six: Possession With Intent to Deliver (heroin and/or fentanyl) - 27 months to 54 months of incarceration, consecutive to any other sentence currently being served.
>
> Count Seven: Criminal Use of Communication Facility - 15 months to 30 months of incarceration, consecutive to Count Six.

On December 27, 2018, Appellant filed a post-sentence motion and a Petition to Withdraw as Counsel. The Court denied the post-sentence motion on January 2, 2019. On January 23, 2019, Appellant filed a Notice of Appeal. On February 4, 2019, the Court directed

---

[5] See *Tr. Day 2, pp. 172-175* and Commonwealth Exhibit 27

[6] 18 Pa.C.S.A. § 2506; 35 Pa.C.S.A. §780-113(a)(30); 35 Pa.C.S.A. §780-113(a)(16); 18 Pa.C.S.A. §4910(1); 35 Pa.C.S.A. §780-113(a)(30); and 18 Pa.C.S.A. § 7512(a), respectively.

[7] 18 Pa.C.S.A. §4910(1); 35 Pa.C.S.A. §780-113(a)(30); and 18 Pa.C.S.A. § 7512(a), respectively.

8

Appellant to file a 1925(b) Statement of Matters Complained of on Appeal within 21 days. Appellant filed a Statement of Matters Complained of on Appeal on February 28, 2019.[8] Concurrently, Appellant's counsel filed another Petition to Withdraw as Counsel. On March 11, 2019, the Court granted the Petition to Withdraw and directed Appellant to obtain new legal counsel or act as his own counsel for any future proceedings.

Paraphrased, Appellant's Statement of Matters Complained of on Appeal identifies the following issues:

1. Whether evidentiary error occurred in:

   a) admitting into evidence text messages sent to and from the cell phone of decedent, Adam Yurkewicz;

   b) admitting into evidence text messages sent to and from the cell phone Appellant used; and

   c) "refusing to admit Defendant's 'Exhibit B' text messages" from a third party to decedent's cell phone.

2. Whether there was sufficient evidence for the jury to convict at Count Seven, Criminal Use of Communication Facility.

3. Whether the Court "failed to hold a proper hearing on the Defendant's Motion in Limine."

## DISCUSSION

### I. Untimely 1925(b) Statement

Appellant has waived review of the appellate claims as the 1925(b) Statement was untimely. The Court issued a 1925(b) Order on February 4, 2019, directing Appellant to file and serve a 1925(b) Concise Statement of Matters Complained of on Appeal within 21 days. This was not done. Appellant's Statement of Matters Complained of on Appeal was not filed until February 28, 2019. The claims are waived.

_____

[8] The 1925(b) Statement was due for filing on Monday, February 25, 2019.

9

Under the Pennsylvania Rules of Appellate Procedure, a Judge is permitted to grant an extension of time to file a Statement "[u]pon application of the appellant and for good cause shown". Pa.R.A.P. 1925(b)(2). To preserve claims for appellate review, Appellants must comply whenever the trial court orders them to file a Statement of Matters Complained of on Appeal pursuant to Rule 1925 or the result is automatic waiver. See *Commonwealth v. Lord*, 719 A.2d 306, 309 (Pa. 1998); also *Commonwealth v. Castillo*, 888 A.2d 775 (Pa. 2005). Here, the 1925(b) was untimely and no request to extend the time for filing was submitted to the Court. Therefore, the issues raised in Appellant's Statement of Matters Complained of on Appeal are waived. Pa.R.A.P. 1925(b); *Hess v. Fox Rothschild, LLP*, 925 A.2d 798, 804 (Pa. Super. 2007).

Assuming *arguendo* there is no waiver due to the untimely 1925(b) Statement, the issues raised in Appellant's 1925(b) Statement shall be addressed *ad seriatim*.


## II.    Claims of Evidentiary Error

Appellant makes multiple claims of evidentiary error regarding the Court's rulings on the admissibility of certain text message exchanges. See *1925(b) Statement, ¶¶ 1, 2 and 3*. Appellant's claims are meritless.

### A. Relevant Legal Principles

Except as otherwise provided by law, all relevant evidence is admissible. Pa.R.E. 402.

> The threshold inquiry with admission of evidence is whether the evidence is relevant. Evidence is relevant if it logically tends to establish a material fact in the case, tends to make a fact at issue more or less probable, or supports a reasonable inference or presumption regarding the existence of a material fact. In addition, evidence is only admissible where the probative value of the evidence outweighs its prejudicial impact.

*Commonwealth v. Stokes*, 78 A.3d 644, 654 (Pa. Super. 2013) (internal citations and quotation marks omitted). Evidence is not unfairly prejudicial simply because it may be harmful to the defendant's case. *Id.*

Also, as appropriate, evidence must be properly authenticated. "[T]he proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." Pa.R.E. 901(a). This can include testimony by a witness with knowledge of the item that the item is what it is claimed to be. Pa.R.E. 901(b)(1).

Text messages may be authenticated by: (1) testimony of the author or sender; (2) circumstantial evidence, including distinctive characteristics tending to identify the author or sender or references to events preceding or following the messages; or (3) any other facts or aspects of the messages that signify they are what the proponent claims them to be. *Commonwealth v. Murray*, 174 A.3d 1147, 1156–57 (Pa. Super. 2017), *appeal denied*, 187 A.3d 204 (Pa. 2018); *see also* Pa.R.E. 901.

### 1.   Text messages sent from and received on Yurkewicz's cell phone

First, Appellant claims it was error to admit text messages dated January 5, 2018 which were sent from and received on Yurkewicz's cell phone, which was assigned the number 814-520-3540.[9] Appellant claims error occurred because "the Commonwealth was unable to authenticate the text messages . . . as they were unable to prove the author(s) of the text messages sent from . . . [and] received by cell #814-520-3540. *1925(b) Statement, ¶ 1.*

Appellant's first claim of evidentiary error is waived as vague. If not waived, Appellant's evidentiary claim is wholly without merit. Assuming *arguendo* error occurred, it was harmless error.

---

[9] It is undisputed the decedent, Adam Yurkewicz, was the owner of the cell phone associated with the number 814-520-3540. *Tr. Day 1, p.22.*

11

Appellant's evidentiary claim is waived as vague. In the 1925(b) Statement, Appellant only provides Yurkewicz's cell phone number with no context or reference to specific errors in the record. A concise statement which is too vague to allow the court to identify the issues raised on appeal is the functional equivalent of no concise statement at all. *Commonwealth v. Reeves,* 907 A.2d 1, 2 (Pa.Super. 2006), *appeal denied,* 919 A.2d 956 (Pa. 2007). The court's review and legal analysis can be fatally impaired when the court has to guess at the issues raised. *Id.* If a concise statement is too vague, the court may find waiver. *Id.* Appellant's claim of evidentiary error is not specific enough for the Court to adequately address, and therefore the claim is waived as vague.

If this claim is not waived for vagueness, Appellant's claim is without merit. Any claim that text messages sent from and received by Yurkewicz's cell phone were not properly authenticated must fail. There was more than sufficient testimony from witnesses with knowledge demonstrating the cell phone was what it was purported to be – Yurkewicz's cell phone. This included testimony from Yurkewicz's fiancée, Kayla Turk, who confirmed text exchanges between herself and Yurkewicz on January 5, 2018 and Yurkewicz's grandmother, Marlene, who confirmed the phone calls she and Yurkewicz had the morning of January 5, 2018; testimony from Detective Presner that he had recovered the cell phone at issue from Yurkewicz's pocket; and testimony from Detective Styn regarding the data, including personal social media accounts and email associated with Yurkewicz, extracted from the cell phone.

Also, there was significant circumstantial evidence corroborating that not only was it Yurkewicz's cell phone, but that Yurkewicz was indeed the author of the text messages at issue. This included evidence, previously discussed herein, of text messages with 9983 indicative of a drug transaction and pings from Yurkewicz's cell phone putting him in the area of 24th and

12

German when the deal with Appellant was set to occur. When Yurkewicz's body was found, a loaded syringe was found in the nearby sink and a packet of fentanyl was found in his pocket. The circumstantial evidence sufficiently identifies Yurkewicz as the author of the text messages based on the references to the events preceding and following the text messages and the surrounding facts of the case. The text messages sent from and received on Yurkewicz's cell phone were properly authenticated and there was no error in their admission. Appellant's claim of error must be dismissed.

Assuming *arguendo* the text messages on Yurkewicz's cell phone were not properly authenticated, it was harmless error to admit them. A primary purpose in introducing the text messages from Yurkewicz's cell phone was to establish a line of communication between Appellant and Yurkewicz, linking Appellant to Yurkewicz's death. Appellant was acquitted of the charge relating to Yurkewicz's death, Count One - Drug Delivery Resulting in Death. Also, Appellant was acquitted of the following charges arising from alleged activities of January 5, 2018: Count Two - Possession With Intent to Deliver (fentanyl), Count Three - Possession of Drug Paraphernalia, and Count Four – Possession (heroin/fentanyl). Therefore, the identity of the author of text messages on Yurkewicz's cell phone is of no consequence and no prejudice occurred to Appellant by their admission.

2.     **Text messages sent from and received on the cell phone associated with 9983.**

Second, Appellant claims it was error to admit text messages dated January 5, 2018 and January 6, 2018 which were sent from and received on a cell phone with a number of 814-449-9983. Appellant claims error occurred because "the Commonwealth was unable to authenticate the text messages . . . as they were unable to prove the author(s) of the text messages sent from . . . [and] received by cell # 814-449-9983." *1925(b) Statement, ¶ 2.*

13

Appellant's second claim of evidentiary error is also waived as vague. Further, Appellant's evidentiary claim is wholly without merit.

Appellant's claim is waived as vague. Appellant's 1925(b) Statement does not identify where the specific issues complained of regarding the cell phone number 814-449-9983 are found in the record or their significance in the outcome of the case. Appellant's claim of evidentiary error is not specific enough for the Court to adequately address, and therefore the claim is waived as vague. *See* Pa.R.A.P. 1925(b); *Commonwealth v. Reeves,* 907 A.2d at 2.

Assuming *arguendo* the claim is not waived as vague, the assertion the text messages sent from and received by 9983 were not properly authenticated is meritless. There was sufficient testimony from witnesses with knowledge demonstrating the cell phone was what it was purported to be – Appellant's cell phone. Detective Fiorelli testified that the iPhone in the red and black case was recovered next to Appellant's seat in the vehicle, and the iPhone was connected to the number 9983. There were significant contextual clues and circumstantial evidence corroborating that Appellant was the author of the text messages at issue. This included: the texts between Yurkewicz and 9983 and the circumstances surrounding Yurkewicz's death discussed above; the contents of texts between third parties and 9983 using slang terms consistent with drug dealing, where 9983 set up the location for the transactions in areas near Appellant's home; and third party texts identifying Appellant by name to which he responded affirmatively. Most significantly, at the time and place of the undercover drug deal between the author of texts from 9983 and Detective Hardner, Appellant arrived in a white Audi in possession of heroin and fentanyl.

Applying the relevant legal principles, the totality of the evidence was more than sufficient to identify Appellant as the author of the text messages from 9983 based on the

14

references to the events preceding and following the text messages and the surrounding facts of the case. The circumstantial evidence established Appellant authored the texts from 9983. The texts were properly authenticated and there was no error in their admission. Appellant's claim of error must be dismissed.

Appellant asserts the cases of *Commonwealth v. Koch*, 39 A.3d 996 (Pa. Super. 2011), *aff'd*, 106 A.3d 705 (Pa. 2014), and *Commonwealth v. Mangel*, 181 A.3d 1154, 1159 (Pa. Super. 2018) require a different conclusion. Appellant's assertions are unpersuasive. In *Koch*, on an issue of first impression, the Pennsylvania Superior Court considered what was required to authenticate text messages. *Commonwealth v. Koch*, 39 A.3d at 1003. The Superior Court concluded text messages are documents subject to the same requirements for authenticity as non-electronic documents. *Koch* at 1004. The Court determined such authentication requires more than mere confirmation that the number belongs to a particular person. Additional "[c]ircumstantial evidence, which tends to corroborate the identity of the sender, is required." *Koch* at 1005. In *Koch*, the Superior Court determined text messages were admitted in error where the Commonwealth's witness acknowledged he could not confirm the defendant was the author of the texts and *conceded the defendant did not write some of the messages*. Notably, in *Koch*, there were *no contextual clues tending to reveal the identity of the author and no evidence the defendant had written the text messages* ("Glaringly absent in this case is any evidence tending to substantiate that Appellant wrote the drug-related text messages." *Koch* at 1005). In the instant case, there was substantial circumstantial evidence pointing to Appellant as the author of texts from 9983.

*Mangel* is largely inapplicable to the instant facts as it specifically concerned authentication of social media. *Commonwealth v. Mangel*, 181 A.3d at 1159. However, the

15

Court in *Mangel* applied the Superior Court's reasoning in *Koch* in determining the authentication of social media evidence requires "direct or circumstantial evidence that tends to corroborate the identity of the author of the communication in question, such as testimony from the person who sent or received the communication, *or contextual clues in the communication tending to reveal the identity of the sender." Mangel* at 1162 (emphasis added). Again, the facts and holding of *Mangel* do not support Appellant's claims under the facts of the instant case. Appellant's claim must be dismissed.

### 3.    Contents of 'Exhibit B' and "Jake B."

Appellant contends it was error to refuse "to admit Defendant's 'Exhibit B', text messages from 'Jake B' to the decedent's cell phone". Appellant appears to claim 'Exhibit B' would have "delineat[ed] a separate source of illegal narcotics". *1925(b) Statement,* ¶ *3.*

Appellant's claim is waived. Further, it lacks a factual basis. Assuming *arguendo* the claim is not waived, no error occurred.

The claim is waived as vague and underdeveloped. Appellant provides no references to the record of any attempt to introduce 'Exhibit B' or the Court's ruling thereon. Appellant fails to identify the significance of any such text messages other than to suggest they delineate a separate source of illegal drugs. Appellant fails to identify how any other source of illegal narcotics would have changed the outcome of this case. Appellant was acquitted of the charges relating to the death of Yurkewicz. The Court cannot adequately address this issue for lack of specificity. The claim is waived. Pa.R.A.P. 1925(b).

Similarly, Appellant's claim that the Court refused to admit 'Exhibit B' is factually inaccurate and belied by the record. Appellant provides no references to the record of any

16

attempt to introduce 'Exhibit B' or the Court's ruling thereon. [10]

Even if 'Exhibit B' had been offered into the record and the Court refused its admission, there was no error. 'Exhibit B' contained excerpts from Detective Styn's report regarding the contents of Yurkewicz's cell phone. Initially, the Court did not permit Appellant to question Detective Styn about any text messages from "Jake B" on the basis of relevancy. *Tr. Day 2, pp. 134-135.* However, the Court *subsequently permitted Appellant to question Detective Styn regarding 'Exhibit B'* over the Commonwealth's objection:

> MR. HOPKINS: Detective, did you pull the information contained in Defendant's Exhibit B from the phone of Mr. Yurkewicz?
>
> DETECTIVE STYN: Yes.
>
> MS. ANGLIN: And Judge, I'm going to object to any reference to Defense's Exhibit B. We have no objection to Exhibit A, but B we do have a problem with.
>
> MR. HOPKINS: I haven't asked her to read from it or say anything more about it. Just that she did pull that information from the phone.
>
> THE COURT: That's fine, as it relates to that question.
>
> MR. HOPKINS: Thank you.

*Tr. Day 2, p. 136.*

The questioning regarding 'Exhibit B' continued:

> MR. HOPKINS: Okay, so looking at Defendant's Exhibit B, are you able to tell us whether or not **any additional messages that had been deleted still** – had been overwritten **after the third of January?**
>
> DETECTIVE STYN: Is there a page number for that? I'm sorry.
>
> MR. HOPKINS: Well, the messages begin on the sixth page, but the question is, since **all of the messages on Defendant's Exhibit B are marked deleted** – **is that right?**

---

[10] There is no indication in the record that 'Exhibit B' was offered as an exhibit or the Court refused its admission. *Tr. Day 2, pp. 132-142.*

17

DETECTIVE STYN: **Yes.**

MR. HOPKINS: -- are you able to tell us whether or not there were further messages from the phone number listed in Defendant's Exhibit B after the third that were deleted, but didn't -- weren't recoverable?

DETECTIVE STYN: No, I would not be able to tell you that.

MR. HOPKINS: So the phone conversation in this could've continued?

DETECTIVE STYN: Correct.

MR. HOPKINS: But based on the phone overwriting areas, we don't know?

DETECTIVE STYN: Correct.

MR. HOPKINS: Your Honor, I would again seek to go further.

THE COURT: **That's a matter of pure speculation.**

MR. HOPKINS: To be clear, just going with what we do have the records for-

THE COURT: I've already ruled on that.

MR. HOPKINS: Okay.

*Tr. Day 2, p. 139-140 (emphasis added).*

Appellant's counsel even elicited testimony from Detective Styn the texts on 'Exhibit B' were deleted from Yurkewicz's cell phone. *Tr. Day 2, p. 139.* A fair reading of Appellant's cross-examination revealed all messages listed on 'Exhibit B' were deleted and 'Exhibit B' showed no messages were retrieved after January 3, 2018. Given the latitude afforded to Appellant's counsel in regard to questioning Detective Styn about 'Exhibit B', Appellant was free to advance any theory that messages from a third party source may have been deleted or overwritten in Yurkewicz's cell phone. The only limitation placed on Appellant's cross-examination of Detective Styn was the inability to question Detective Styn about "Jake B", a topic the Court determined was irrelevant and speculative. Appellant's claim is meritless.

18

Assuming *arguendo* error occurred in precluding reference to "Jake B" during questioning of Detective Styn, this was harmless error. Per the 1925(b) Statement, it appears Appellant's intention with 'Exhibit B' (excerpts from Detective Styn's report regarding the contents of Yurkewicz's cell phone) was to suggest "Jake B" as a possible source of illegal narcotics for Yurkewicz. This is of no moment. Appellant was acquitted of Count One, Drug Delivery Resulting in Death (Yurkewicz). Furthermore, the texts referenced in 'Exhibit B' were deleted and no texts referenced on 'Exhibit B' were dated after January 3, 2018. Therefore, no prejudice occurred and any claimed error was harmless. Appellant's claim must be dismissed.

## III. Sufficiency of the evidence for conviction on Count Seven – Criminal Use of Communication Facility.

Appellant asserts the evidence was insufficient for the jury to convict at Count Seven, Criminal Use of Communication Facility, because "the Court should not have erroneously admitted the unauthenticated text messages". See *1925(b) Statement, ¶ 4.* This claim is without merit and should be dismissed.

### A. Sufficiency of the Evidence Standard

When evaluating a challenge to the sufficiency of the evidence, the Court must determine whether, viewing the evidence in the light most favorable to the Commonwealth as the verdict winner, together with all reasonable inferences from that evidence, the trier of fact could have found each element of the crime charged was established beyond a reasonable doubt. *Commonwealth v. Hargrave,* 745 A.3d 20, 22 (Pa.Super. 2000), *appeal denied,* 760 A.2d 851 (Pa. 2000)(internal citations omitted); *Commonwealth v. Brunson,* 938 A.2d 1057, 1058 (Pa.Super. 2007); *Commonwealth v. Chambers,* 599 A.2d 630, 633 (Pa. 1991). The Commonwealth may sustain its burden of proof by means of wholly circumstantial evidence.

19

*Commonwealth v. Hopkins,* 747 A.2d 910, 913 (Pa.Super. 2000). The facts and circumstances established by the Commonwealth need not preclude every possibility of innocence, and any questions or doubts are to be resolved by the fact-finder, unless the evidence is so weak and inconclusive that, as a matter of law, no probability of fact can be drawn from the combined circumstances. *Commonwealth v. Hopkins, supra* at 913-14.

Viewing the evidence against this standard, Appellant's contention is without merit.

**B.     Review of Evidence for Sufficiency Claims**

Appellant's claim of sufficiency of the evidence is meritless and must be dismissed. The factual basis for Criminal Use of Communication Facility at Count Seven is that on the morning of January 6, 2018, Appellant, using phone number (814) 449-9983, had contact with an undercover officer regarding a drug transaction at the 300 block of East 24th Street, City of Erie, Erie County, Pennsylvania. *Information.*

To sustain a conviction for Criminal Use of Communication Facility (18 Pa. C.S.A. § 7512), the Commonwealth must establish the defendant: 1) knowingly and intentionally used a communication facility; 2) knowingly, intentionally or recklessly facilitated an underlying felony; and 3) the underlying felony occurred. *Commonwealth v. Moss,* 852 A.2d 374, 382 (Pa. Super. 2004). A "communication facility" is defined as "a public or private instrumentality used or useful in the transmission of signs, signals, writing, images, sounds, data or intelligence of any nature transmitted in whole or in part, including, but not limited to, telephone, wire, radio, electromagnetic, photoelectronic or photo-optical systems or the mail." 18 Pa. C.S.A. § 7512(c).

The elements of the crime were satisfied. Here, the record, viewed in the light most favorable to the Commonwealth, established beyond a reasonable doubt that Appellant

20

knowingly and intentionally used the cell phone associated with 9983 to engage in a drug transaction with undercover Detective Hardner on January 6, 2018. As recounted previously, the record established Appellant had contact with Detective Hardner regarding a drug transaction occurring at 24th Street between German and Parade Streets. At 9:19 a.m. on January 6, 2018, Detective Hardner texted "Yo" to 9983 using Yurkewicz's cell phone. *See* Commonwealth Exhibit 12. At 9:54 a.m., Appellant responded "sup" and a conversation ensued regarding the drug transaction. At 10:44 a.m., Appellant directed Detective Hardner to "meet me on 24" at which point Detective Hardner and back-up officers travelled to East 24th Street between German and Parade Streets. At 11:04 a.m. Detective Hardner texted "Pullin up". A white Audi was observed driving down East 24th Street and briefly stopping at Appellant's mother's home located on the same block. Appellant exited the vehicle, entered his mother's residence, and shortly thereafter returned to the vehicle. The white Audi moved further down the street and parked on the side of the road in front of Detective Hardner's vehicle. Shortly thereafter, Detective Hardner received a phone call from 9983 with a male voice directing him to come to the "white car". Appellant made suspicious movements in the vehicle just prior to arrest. Heroin and fentanyl were found on the floor mat below the seat where he had been sitting.

Also, Appellant was convicted of the felony offense of Possession With Intent to Deliver (fentanyl) with regard to this specific transaction. There was sufficient evidence for the jury to conclude the elements of Count Seven, Criminal Use of Communication Facility, were established beyond a reasonable doubt. Appellant's claim must fail.

21

## IV. Motion in Limine

Appellant claims error occurred in not holding a "proper hearing" on the Motion in Limine.

Appellant claims this resulted in the admission of otherwise inadmissible text messages. *See 1925(b) Statement,* ¶ 5.

Appellant's claim is waived as vague. Even if the claim is not waived, it is wholly without merit.

Appellant's claim is waived for vagueness. Appellant fails to point to any requirement or rule of law that was not followed. The Court is unable to analyze this issue. Thus, Appellant's claim must fail. *See* Pa.R.A.P. 1925(b); *Commonwealth v. Reeves,* 907 A.2d at 2.

Assuming *arguendo* Appellant's claim is not waived, it is wholly without merit. "A motion in limine is a procedure for obtaining a ruling on the admissibility of evidence *prior to or during trial, but before the evidence has been offered." Commonwealth v. Johnson,* 582 A.2d 336, 337 (Pa. Super. 1990), *aff'd,* 534 Pa. 51, 626 A.2d 514 (1993), citing L. Packel & A.B. Poulin, *Pennsylvania Evidence* § 103.3 (1987) (emphasis added). Essentially, a motion in limine is a vehicle to obtain a ruling on an evidentiary issue and a trial court may reserve its ruling until trial, in which case the parties are prohibited from referring to the evidence during trial until the court makes its ruling. See *Commonwealth v. Metzer,* 634 A.2d 228, 232 n. 3 (Pa. Super. 1993).

In the present case, the issues raised in Appellant's Motion in Limine were fully considered by the Court and the Court made definitive rulings on the issues outside of the presence of the jury. On October 31, 2018, Appellant filed a Motion in Limine, seeking a ruling that text messages dated January 5, 2018 sent from and received on a cell phone associated with 814-520-3540 (Yurkewicz), and text messages dated January 5 and January 6, 2018 sent from

22

and received on a cell phone associated with 814-449-9983 (9983), were inadmissible for lack of authentication and as inadmissible hearsay. Appellant requested an evidentiary hearing on the requests.

On November 13, 2018, before *voir dire*, the Court thoroughly addressed the claims in the Motion in Limine. *Tr. Day 1, pp. 6-36.* The Court considered legal argument by the Commonwealth and Appellant. *Id.* The Court determined the Commonwealth met its "threshold burden" in proffering a basis for authentication of the text messages, advising it would nonetheless be incumbent upon the Commonwealth to proffer sufficient circumstantial evidence at trial to establish authorship. *See Tr. Day 1, pp. 23-24.*

On November 13, 2018, during trial but before the contents of the texts were presented to the jury, the Court held a sidebar regarding text message exchanges on Yurkewicz's phone on January 5, 2018. *Tr. Day 1, pp. 227-230.* The Court found there was sufficient circumstantial evidence to authenticate the texts. *Id.*

During a recess on November 14, 2018, the Court addressed with counsel Appellant's objection regarding authentication of text message exchanges on 9983. *Tr. Day 2, pp. 61-69.* The Court determined the text message, "Dion", from a third party to 9983 was admissible for the limited purpose of connecting or linking the cell phone with Appellant. *Tr. Day 2, pp. 64-65.* The Court also ruled the texts between the dates of January 5 and January 6, 2018, between third parties and 9983 regarding a change in the drug supply, were relevant and admissible. *Tr. Day 2, pp. 68-69.* The record demonstrates the Court appropriately addressed all of Appellant's claims in the Motion in Limine. Appellant's claim is wholly without merit.

23

## CONCLUSION

For foregoing reasons, the judgment of sentence should be affirmed. The Clerk of Courts

is hereby directed to transmit the record to the Superior Court.

**BY THE COURT:**

4/5/2019
Date

Daniel J. Brabender, Jr., Judge

cc:    District Attorney's Office
Public Defender's Office
Damon Hopkins, Esq.

24

COMMONWEALTH OF PENNSYLVANIA : IN THE COURT OF COMMON PLEAS
: OF ERIE COUNTY, PENNSYLVANIA
:
v. : CRIMINAL DIVISION
:
DION ELIJAH WAYNE : NO. 697 – 2018

## SUPPLEMENTAL 1925(a) OPINION

This matter is before the Court on Appellant's Amended Statement of Matters Complained of on Appeal filed on June 28, 2019. For the reasons set forth in this Court's 1925(a) Opinion filed on April 8, 2019 and the reasons set forth below, the judgment of sentence should be affirmed.

## BACKGROUND

On January 23, 2019, Appellant filed a Notice of Appeal. On February 4, 2019, the Court directed Appellant to file a 1925(b) Statement of Matters Complained of on Appeal within 30 days.[1] Appellant filed a Statement of Matters Complained of on Appeal on February 28, 2019. On April 8, 2019, this Court filed the 1925(a) Opinion in this matter. The opinion is incorporated herein by reference.

On June 14, 2019, Appellant filed an Application for Relief with the Superior Court of Pennsylvania, requesting leave to amend the 1925(b). On June 20, 2019, the Superior Court of Pennsylvania remanded the record to this Court to allow Appellant to file an amended 1925(b), and directed this Court to prepare a supplemental 1925(a) Opinion. On June 28, 2019, Appellant

---

[1] This Court notes an error was made in its original 1925(a) Opinion in calculating Appellant's original 1925(b) Statement untimely. Appellant was granted 30 days, not 21 days, to file the 1925(b) Statement by Order of February 4, 2019. The 1925(b) Statement, filed on February 28, 2019, was therefore timely.

filed an Amended Statement of Matters Complained of on Appeal. This Opinion is in response thereto.[2]

Paraphrased, Appellant's Amended Statement of Matters Complained of on Appeal raises issues regarding the sufficiency of the evidence, to-wit:

1.      Whether there was sufficient evidence for the jury to convict at Count Six, Possession With Intent to Deliver (heroin and/or fentanyl);

2.      Whether there was sufficient evidence for the jury to convict at Count Five, Tampering With or Fabricating Physical Evidence; and

3.      Whether there was sufficient evidence for the jury to convict at Count Seven, Criminal Use of Communication Facility.

## DISCUSSION

The standard of review for the sufficiency of the evidence was previously set forth in the Court's original 1925(a) Opinion:

> When evaluating a challenge to the sufficiency of the evidence, the Court must determine whether, viewing the evidence in the light most favorable to the Commonwealth as the verdict winner, together with all reasonable inferences from that evidence, the trier of fact could have found each element of the crime charged was established beyond a reasonable doubt. *Commonwealth v. Hargrave*, 745 A.3d 20, 22 (Pa.Super. 2000), *appeal denied*, 760 A.2d 851 (Pa. 2000)(internal citations omitted); *Commonwealth v. Brunson*, 938 A.2d 1057, 1058 (Pa.Super. 2007); *Commonwealth v. Chambers*, 599 A.2d 630, 633 (Pa. 1991). The Commonwealth may sustain its burden of proof by means of wholly circumstantial evidence. *Commonwealth v. Hopkins*, 747 A.2d 910, 913 (Pa.Super. 2000). The facts and circumstances established by the Commonwealth need not preclude every possibility of innocence, and any questions or doubts are to be resolved by the fact-finder, unless the evidence is so weak and inconclusive that, as a matter of law, no probability of fact can be drawn from the combined circumstances. *Commonwealth v. Hopkins*, *supra* at 913-14.

*Opinion, April 8, 2019 at 19-20.*

---

[2] The Amended 1925(b) Statement filed on June 28, 2019 did not incorporate by reference the allegations in the original 1925(b) Statement filed on February 28, 2019.

When viewed against this standard, Appellant's additional claims regarding the sufficiency of the evidence must fail. Appellant's claims will be addressed *ad seriatim*.

### 1. Sufficiency of the evidence for conviction on Count Six – Possession With Intent to Deliver (heroin and/or fentanyl).

Appellant asserts the evidence was insufficient for the jury to convict at Count Six, Possession With Intent to Deliver (heroin and/or fentanyl), because ". . . the Commonwealth failed to present sufficient evidence that the controlled substance was ever in the possession of Appellant, that the Appellant was aware of its presence, and/or that the Appellant possessed the controlled substance with the intent to deliver it or furnish it to another." See *Amended Statement of Matters Complained of on Appeal,* ¶ *B9.* This claim is without merit and should be dismissed.

Appellant's claim of sufficiency of the evidence is meritless and must be dismissed. The factual basis for Possession with Intent to Deliver (heroin and/or fentanyl) at Count Six is that on January 6, 2018, Appellant, directly or by virtue of his complicity, did deliver or possess with intent to deliver heroin and/or fentanyl to an undercover Millcreek Township Police Officer posing as Adam J. Yurkewicz at the 300 block of East 24th Street, City of Erie, Erie County, Pennsylvania. *Information.*

To sustain a conviction for Possession With Intent to Deliver (35 Pa.C.S.A. § 780-113(a)(30)), the Commonwealth must establish the defendant: 1) possessed a controlled substance and 2) intended to deliver it. See *Commonwealth v. Little,* 879 A.2d 293, 297 (Pa. Super. 2005). All of the facts and circumstances surrounding the possession are relevant and the elements of the crime may be established by circumstantial evidence. *Id.* "The Commonwealth may meet its burden of proving a possessory crime by showing actual possession, constructive

3

possession, or joint constructive possession. *Commonwealth v. Hall*, 199 A.3d 954, 960 (2018), *appeal denied*, 206 A.3d 1028 (Pa. 2019) (citations omitted). "Constructive possession" has been defined as the "ability to exercise a conscious domain over" an item and requires proof that the defendant had knowledge of the existence and location of the item. *Commonwealth v. Hall, 199 A.3d at 961*. When ". . . more than one person has access to the contraband, 'the Commonwealth must introduce evidence demonstrating either [the defendant's] participation in the drug-related activity or evidence connecting [the defendant] to the . . . areas where the drugs were kept'." *Id.* The elements of control can be proven circumstantially by examining the totality of the circumstances. *Id.*

The elements of the crime were satisfied. Here, the record, viewed in the light most favorable to the Commonwealth, established beyond a reasonable doubt that Appellant was in at least constructive possession of heroin and/or fentanyl, as he had the ability to exercise conscious domain over the drugs, he was aware of their existence and location within the vehicle, and significant evidence existed demonstrating Appellant's participation in drug-related activity.

In its original 1925(a) Opinion, the Court exhaustively discussed the overwhelming evidence establishing Appellant had engaged in text messages to arrange a drug transaction to occur on January 6, 2018 at 24th Street between German and Parade Streets. The evidence also established Appellant resided only a few houses down from the location arranged for the drug deal. Immediately after the final texts arranging the delivery of the drugs, the white Audi Appellant was traveling in stopped in front of his mother's residence and Appellant exited from the front passenger seat of the vehicle. Shortly thereafter, Appellant re-entered the Audi and the vehicle moved a little further down the road. *Transcript of Proceedings, Day 2, November 14, 2018 (Tr. Day 2) pp. 246-247*. It was at this time the phone call directing the undercover officer

4

to the "white car" was received. *Tr. Day 2, pp. 189-197.* As officers were approaching the vehicle to effectuate an arrest, Appellant was observed leaning forward in the passenger seat "making furtive movements with his arms towards the floorboards of the front passenger's seat." *Tr. Day 2, pp. 153-154.* When Appellant was removed from the front passenger seat of the white Audi for arrest, he kept trying to brush off a "white powdery substance" from the right leg of his sweatpants. *Tr. Day 2, p. 156.* Upon a search of the vehicle immediately following Appellant's arrest, a "chunky substance with powder residue on top" was located on the floor mat on the front passenger side of the Audi. *Id.* Subsequent testing revealed the substance recovered from the passenger floor contained heroin and fentanyl. *Tr. Day 2, pp. 233-235.* A folded-up white piece of paper, consistent with a common way of packaging heroin or fentanyl, was also recovered from the passenger floor of the vehicle. *Tr. Day 2, pp. 157-161.* The search of Appellant's person recovered, among other things, $1,020.00 of US currency "in a stack." *Tr. Day 2, pp. 164-166.*

When viewed in the light most favorable to the Commonwealth, the evidence was sufficient to establish beyond a reasonable doubt that Appellant was in constructive possession of heroin and/or fentanyl and intended to deliver the drugs. Appellant was the passenger in the white Audi that arrived at 24th Street between German and Parade Streets on January 6, 2018 to complete a drug deal. It is also indisputable that a substance was found on the passenger's side floor mat of the Audi that tested positive for heroin and/or fentanyl. Although he was not the only occupant of the vehicle, Appellant had at least equal access to the drugs and the drugs were found in close proximity to where Appellant was sitting in the vehicle. The white piece of paper, consistent with drug packaging, was also right below where Appellant had been sitting. Appellant's behavior was suspicious, as suddenly upon realizing the police were closing in he

began making "furtive movements with his arms" in the direction of the floorboard. No drug paraphernalia was found indicating the drugs were for personal use. An unusually large stack of cash was found in Appellant's pockets. These facts and circumstances established Appellant possessed the heroin and/or fentanyl with the intent to deliver in violation of the statute. Appellant's claim must fail.

### 2. Sufficiency of the evidence for conviction on Count Five – Tampering With or Fabricating Physical Evidence

Appellant asserts the evidence was insufficient for the jury to convict at Count Five, Tampering With or Fabricating Physical Evidence, because ". . . the Commonwealth failed to establish that the Appellant was even in possession of heroin/fentanyl at the time of his arrest . . . [and] failed to establish that the Appellant did anything to destroy and/or conceal heroin/fentanyl from being discovered in the vehicle." See *Amended Statement of Matters Complained of on Appeal, ¶ B10.* This claim is without merit and should be dismissed.

Appellant's claim of sufficiency of the evidence is meritless and must be dismissed. The factual basis for Tampering with or Fabricating Physical Evidence at Count Five is that on January 6, 2018, Appellant emptied heroin and/or fentanyl from a folded white piece of paper onto the floor of the vehicle at the 300 block of East 24th Street, City of Erie, Erie County, Pennsylvania. *Information.*

In relevant part, a person is guilty of Tampering With or Fabricating Physical Evidence if, believing that an official proceeding or investigation is pending or about to be instituted, he conceals or removes any thing with the intent to impair its verity or availability in such proceeding or investigation. 18 Pa.C.S.A. § 4910(1).

6

The elements of the crime were satisfied. Here, the record, viewed in the light most favorable to the Commonwealth, established beyond a reasonable doubt that Appellant attempted to conceal or impair the availability of contraband in connection with a pending investigation. As discussed above, the evidence established Appellant constructively possessed heroin and/or fentanyl with the intent to distribute it. At the time of the drug deal, when Appellant realized he had been caught in a drug sting, he hurriedly attempted to dispose of the drugs before the police reached the vehicle. Appellant was observed making "furtive arm movements" toward the passenger side floorboard of the vehicle, where subsequently heroin and/or fentanyl were found. The evidence was sufficient for the jury to conclude the elements of Count Five, Tampering With or Fabricating Physical Evidence, were established beyond a reasonable doubt. Appellant's claim must fail.

3. **Sufficiency of the evidence for conviction on Count Seven – Criminal Use of Communication Facility.**

Finally, Appellant asserts the evidence was insufficient for the jury to convict at Count Seven, Criminal Use of Communication Facility, because "the Court should not have erroneously admitted the unauthenticated text messages". See *Amended Statement of Matters Complained of on Appeal, ¶ B11*. This claim is without merit and should be dismissed.

Appellant's claim of sufficiency of the evidence as to Count Seven, Criminal Use of Communication Facility as well as the claim of evidentiary error regarding the text messages were fully addressed in the Court's original 1925(a) Opinion. *See Opinion, April 8, 2019, 10-16; 19-21*. The Court's analysis and reasoning as to this repeated claim is incorporated herein as if set forth in its entirety. Appellant's claim must be dismissed.

7

## CONCLUSION

For foregoing reasons, the judgment of sentence should be affirmed. The Clerk of Courts

is hereby directed to transmit the record to the Superior Court.

BY THE COURT:

8/15/2019

**Date**

_Daniel J. Brabender, Jr., Judge_

cc:     District Attorney's Office
        Emily Merski, Esq., Public Defender's Office

8